**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Rony Guldmann (RG 5323)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Classes*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HENRY FRANKLIN, *on behalf of himself and*
*others similarly situated*,

      Plaintiff,

      v.

VERTEX GLOBAL SOLUTIONS, INC. and
FRESH DIRECT, LLC,

      Defendants.

---

   Case No.:

**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

Plaintiff HENRY FRANKLIN ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, pursuant to this Class Action Complaint against Defendants VERTEX GLOBAL SOLUTIONS, INC. ("Vertex") and FRESH DIRECT, LLC ("Fresh Direct") (collectively, "Defendants"), alleges the following:

## NATURE OF THE ACTION

    1.    This action seeks to bring a stop to, and to obtain redress for, those harmed by Defendants' unlawful and discriminatory criminal history screening policies and practices, which have been used to deny employment opportunities to otherwise qualified job applicants.

2.      Plaintiff Franklin brings this lawsuit on behalf of himself and all others similarly situated against Defendants for willful and/or negligent violations of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*, as amended by the Fair Chance Act, which prohibits New York City employers from conducting any inquiry into job applicants' criminal conviction histories before making them a conditional offer of employment.

## PARTIES

*Plaintiff*

3.      Plaintiff Franklin is a citizen of New York and a resident of Richmond County.

*Defendants*

4.      Defendant Vertex Global Solutions, Inc. is a staffing agency with headquarters at 369 Lexington Ave #14B, New York, NY 10017.

5.      Defendant Fresh Direct LLC is a Delaware Corporation that specializes in food delivery to consumers' homes.  Its principal place of business is at 23-30 Borden Avenue, Long Island City, NY 11101-4515 and/or 2 Saint Ann's Ave*,* Bronx, NY 10454-4610.  Its address for service of process is c/o Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this is a class action as defined by 28 U.S.C § 1332(d)(1)(B), whereby: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendants, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

7.      The Court has personal jurisdiction over Defendants because Defendants do

business in New York and the events giving rise to this Complaint took place in New York.

8.       Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendant Vertex is headquartered in this District and a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

9.       Contemporaneously with the filing of this Complaint, Plaintiff will mail a copy of the Complaint to the New York City Commission of Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of Section 8-502 of the New York City Administrative Code.

## THE FAIR CHANCE ACT

10.      New York City has determined that "there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on . . . conviction or arrest record." N.Y.C. Admin. Code § 8-101. Overbroad and/or arbitrary bans on hiring because of conviction histories undermine and violate New York City's clearly articulated policy. Such acts of discrimination "menace the institutions and foundation of a free democratic state." N.Y.C. Admin. Code § 8-101.

11.      Accordingly, New York City amended its Human Rights Law ("NYCHRL") on October 27, 2015, with the Fair Chance Act, which "make[s] it an unlawful discriminatory practice for most employers, labor organizations, and employment agencies to inquire about or consider the criminal history of job applicants until after extending conditional offers of employment." *NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act*, Local Law No. 63 at 1 (2015). *See also* NYC Administrative Code 8-107(11-a)(a)(1)(3).

3

12.     Beyond prohibiting premature inquiries into criminal records, the Fair Chance Act also makes it an unlawful discriminatory practice for an employer to "[d]eclare, print or circulate or cause to be declared, printed or circulated any solicitation, advertisement or publication, which expresses, directly or indirectly, any limitation, or specification in employment based on a person's arrest or criminal conviction." NYC Administrative Code 8-107(11-a)(a)(1).

13.     The Fair Chance Act specifies the following procedures for inquiring into criminal backgrounds, any deviation from which is unlawful:

> (b)  After extending an applicant a conditional offer of employment, an employer . . . may inquire about the applicant's arrest or conviction record if before taking any adverse employment action based on such inquiry, the employer, employment agency or agent thereof
>
> > (i)  provides a written copy of the inquiry to the applicant in a manner to be determined by the commission;
> >
> > (ii)  performs an analysis of the applicant under article twenty-three-a of the correction law and provides a written copy of such analysis to the applicant in a manner determined by the commission, which shall include but not be limited to supporting documents that formed the basis for an adverse action based on such analysis and the employer's . . . reasons for taking any adverse action against such applicant; and
> >
> > (iii)  after giving the applicant the inquiry and analysis in writing pursuant to subparagraphs (i) and (ii) of this paragraph, allow the applicant a reasonable time to respond, which shall be no less than three business days and during this time, holds the position open for the applicant.

N.Y.C. Admin Code § 8-107(11-a)(b).

14.     The Article 23-A requirements incorporated by the Fair Chance Act prohibit employers from denying employment to an individual "when such finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless"

employers can show either "a direct relationship" between the conviction(s) and the job or "an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." N.Y. Corr. Law § 752.

15.     To determine whether such a direct relationship and unreasonable risk exist, Article 23-A requires employers to consider the following eight factors before taking any adverse action on the basis of a job applicant's criminal record:

(a)  The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.

(b)  The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.

(c)  The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.

(d)  The time which has elapsed since the occurrence of the criminal offense or offenses.

(e)  The age of the person at the time of occurrence of the criminal offense or offenses.

(f)  The seriousness of the offense or offenses.

(g)  Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

(h)  The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

N.Y. Correct. Law § 753.

16.     Employers may not deny employment to applicants without first justifying such a decision on the basis of these factors and then giving applicants an opportunity to respond to this analysis. Under (g), prospective employers must also allow applicants to submit evidence

of rehabilitation and good conduct to be considered in the analysis.

17.     The NYCHRL defines the employment relationship expansively, providing that "natural persons working as independent contractors in furtherance of an employer's business enterprise shall be counted as persons in the employ of such employer." NYC Administrative Code § 8-102(5).

18.     NYCHRL also provides that it shall be an unlawful discriminatory or retaliatory practice "[f]or any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so." N.Y.C. Admin Code § 8-107(6).

19.     The Fair Chance Act does not require an aggrieved party to prove any injury beyond the violation of the law itself:

> Donatella argues that the amendment is nonetheless devoid of merit because Harding did not suffer an injury as a result of Donatella's hiring practices. This court disagrees. The Fair Chance Act — in effect at the time — plainly provides that such a pre-offer inquiry regarding criminal history is an unlawful discriminatory practice. (*See* Local Law No. 63 (2015) of the City of New York § 2.) The New York City Administrative Code provides that a person aggrieved by an unlawful discriminatory practice may bring a cause of action for damages (including punitive damages), injunctive relief, or other appropriate remedies. (*See* Administrative Code §§ 8-107 (11-a) (g) and 8-502.) And a person may be aggrieved for purposes of § 8-107 (11-a) even if their only injury was the deprivation of a right protected by the Code. (*See* Administrative Code § 8-102 [definition of "Person aggrieved"].)

CARMELA HARDING, Plaintiff, - v - DONATELLA GCT LLC, DONATELLA ARPAIA, MARK GERAGOS, Defendant., 2019 N.Y. Misc. LEXIS 1675, *3-4

### DEFENDANTS' UNLAWFUL CONDUCT

20.     In or about December 2018, Plaintiff applied for employment with Defendants to work as a delivery person for Fresh Direct, a food delivery service that Vertex staffs.

21.     Vertex and Fresh Direct are both proper Defendants because Plaintiff was applying for employment with both. Defendants cooperate in the hiring of Fresh Direct

6

employees.  Vertex acts as these employees' direct employer for the first few months of their employment. If their performance is satisfactory, Fresh Direct may then formally hire them. Regardless of who signs their paychecks, all Fresh Direct workers hired through Vertex always work directly under the control and supervision of Fresh Direct. This business model is attested to in multiple employee reviews of Vertex, one of which directly addresses Vertex's specific relationship to Fresh Direct:

**5.0**
★★★★

### productive with room to excel

Driver (Former Employee) - New York, NY - April 17, 2018

I have dealt with plenty of temp agencies before and vertex is by far the best experience I've had with a temp agency. Vertex is like family to me. They gave me a chance and I worked my hours enough to convert to the company I work for now. I recommend anyone looking for work to give Vertex a chance and they'll give you a chance to succeed.

Was this review helpful?

**5.0**
★★★★★

### Productive and friendly enviorment.

Warehouse Worker (Former Employee) - Bronx, NY - September 27, 2018

Opportunity to get converted into Company's they hire you for. If you work hard for them they will work hard to get you a permanent position. Temp agency that provides Full Time Job Opportunitys. Highly Recommend.

✔ **Pros**
weekly pay and proactive management

✖ **Cons**
No company events



https://www.indeed.com/cmp/Vertex-Global-Solutions/reviews

22.     Plaintiff was invited to an office for an interview on December 6, 2018, during which he was required to consent to a criminal conviction background check.  He was jointly interviewed by both Defendants, as evidenced by the name tag he was given, which listed both Vertex and Fresh Direct. *See* **Exhibit A**.

23.     A week or two later, he received a letter from Vertex informing him that his background check had disclosed a criminal record. *See* **Exhibit B**. Plaintiff did not hear from Defendants again.

24.     Defendants have willfully breached their legal duties by depriving Plaintiff and other Class member job applicants of their rights under the NYCHRL.

25.     Defendants acted unlawfully against Plaintiff and Class members by conducting background checks on them at the outset of the application process, without having first made them a conditional offer of employment as required by the Fair Chance Act. Indeed, Defendants were already in violation of the Fair Chance Act the instant they announced to applicants that a

criminal background check would be required,

26.     Defendants also acted unlawfully against Plaintiff and Class members by denying them employment on the basis of their conviction histories without conducting an Article 23-A analysis and without giving Plaintiff and Class members an opportunity to submit evidence for, and then respond to, the analysis.

27.     NYCHRL states that no employer may "deny employment to any person" based on a criminal conviction "when such denial or adverse action is in violation of the provisions of article twenty-three-a of the correction law." N.Y.C. Admin. Code § 8-107(10). The New York City Human Rights Commission has stated that "[e]mployers must carefully conduct the Article 23-A analysis"[1] and that "[o]nce an employer extends a conditional offer and learns of an applicant's conviction history, it must solicit the information necessary to properly consider each Article 23-A factor."[2] Defendants failed to do any of this, as Defendants did not contact Plaintiff again after apprising him that their background check had disclosed a conviction history. Instead, they simply denied him employment on the basis of his conviction history.

28.     Had Defendants followed the procedures set forth by the Fair Chance Act, Plaintiff Franklin would have had an opportunity to present evidence of his good conduct and rehabilitation to offset the negative inferences Defendants drew from his conviction history. The Fair Chance Act Notice Defendants should have provided Plaintiff would have apprised

---

[1] NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act, Local Law No. 63 (2015) *Revised 5/24/2019* https://www1.nyc.gov/site/cchr/law/fair-chance-act.page; *see also Matter of Acosta v New York City Dept. of Educ.*, 16 N.Y.3d 309, 319 (2011) ("The Correction Law requires the DOE to 'consider' '[a]ny information produced by the person, or produced on his [or her] behalf, in regard to his [or her] rehabilitation and good conduct' in determining whether the 'unreasonable risk' exception applies to an application (Correction Law § 753 [1] [g])."); *Matter of Tinsley v Taxi & Limousine Commn.*, 62 N.Y.S.3d 769, 770 (2017) ("Under the relevant law, as interpreted by the Court of Appeals, the petitioner was entitled to a full and fair opportunity to present evidence at the hearing."); *Matter of Acosta v New York City Dept. of Educ.*, 16 N.Y.3d 309, 316 (2011) ("A failure to take into consideration each of these [Article 23-A] factors results in a failure to comply with the Correction Law's mandatory directive.")
[2] NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act, Local Law No. 63 (2015) *Revised 5/24/2019* https://www1.nyc.gov/site/cchr/law/fair-chance-act.page

him of the precise nature of their concerns, allowing him to respond directly and allay these. *See* **Exhibit C**.

29.     Facilitating dialogue between prospective employers and applicants with conviction histories is among the primary purposes of the Fair Chance Act:

> By giving an applicant at least three business days to respond, the FCA contemplates a process in which employers discuss their reasons for finding that an applicant's record poses a direct relationship or unreasonable risk. The process allows an applicant to respond either orally or in writing and provide additional information relevant to any of the Article 23-A factors. After receiving additional information from an applicant, an employer must examine whether it changes its Article 23-A analysis. Employers may offer an applicant a similar position that mitigates the employer's concerns.

*NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act*, Local Law No. 63 at 9-10 (2015)[3]

30.     Had Plaintiff been allowed to engage in such dialogue, he would have been hired. Given that Plaintiff was never convicted of a vehicular offense, there is no direct relationship between his conviction and delivering groceries for Fresh Direct. The State of New York determined that Plaintiff did not pose an unreasonable risk to anyone's property, safety, or welfare when it saw fit to parole him, and there is no reason delivering for Fresh Direct would alter this general conclusion.

31.     Thus, Plaintiff suffered harm because he would have been gainfully employed by Defendants but for Defendants' unlawful acts.  As a result of those acts, he was forced to remain unemployed and suffered lost wages. Other Class members suffered similar harms.

32.     The ability to find employment is an essential part of reentering society for people with criminal histories. Recidivism declines when those individuals have viable

---

[3] https://www1.nyc.gov/assets/cchr/downloads/pdf/FCA-InterpretiveGuide-052419.pdf

employment prospects and other stabilizing resources in their communities. Defendants' policy of discriminating against individuals with conviction histories frustrates these public policy objectives. Through their procedures, Defendants violated Plaintiff's and Class members' rights under the New York City Human Rights Law as amended by the Fair Chance Act, which was enacted to protect individuals with criminal convictions against irrational discrimination in employment and thus facilitate their reentry into society.

33.     On behalf of himself and others similarly situated, Plaintiff seeks statutory damages; exemplary and punitive damages; injunctive and/or declaratory relief, pre-judgment and post-judgment interest; and reasonable attorneys' fees, costs, and expenses for Defendants' unlawful conduct as detailed below.

34.     Vertex and Fresh Direct are liable as joint prospective employers.  Both would have signed Plaintiff's paycheck at some point had he been hired. While Vertex would have signed Plaintiff's paycheck initially, Plaintiff would have been working under the direct supervision and control of Fresh Direct. Both Defendants cooperated in subjecting Plaintiff and Class members to unlawful criminal background checks.

35.     To the extent only one of the Defendants qualifies as Plaintiff's prospective employer, the other is liable for aiding, abetting, inciting, compelling, or coercing Plaintiff's prospective employer to violate NYCHRL, in violation of N.Y.C. Admin Code § 8-107(6). Even if Plaintiff was not applying to become an employee of Fresh Direct, he was applying "to carry out work in furtherance of" Fresh Direct's business.  N.Y.C. Admin Code § 8-102(5).

## CLASS ACTION ALLEGATIONS

36.     Plaintiff Franklin brings this case as a proposed class action under the Fair Chance Act pursuant to Federal Rule of Civil Procedure 23 (the "Rule") on behalf of himself self and the following two Classes:

**The Fresh Direct Class**

All individuals who applied to work for Fresh Direct in New York City, either directly or through a third-party vendor, who, during the applicable three-year limitations period, (1) were denied employment and (2) had a background check undertaken on them, or were exposed to any declaration that one would be undertaken, without first receiving a conditional offer of employment.

and

**The Vertex Class**

All individuals who applied for employment through Vertex in New York City who, during the applicable three-year limitations period, (1) were denied employment and (2) had a background check undertaken on them, or were exposed to any declaration that one would be undertaken, without first receiving a conditional offer of employment.

37.     Plaintiff reserves the right to amend the foregoing class definition based on information learned in the course of litigating this case.

38.     Class members are so numerous that joinder of all members is impracticable. The precise number of Class members is uniquely within Defendants' possession, and Class members may be notified of the pendency of this action by published and/or mailed notice.

39.     Plaintiff will fairly and adequately represent and protect the interests of Class members because his interests coincide with, and are not antagonistic to, their interests. Plaintiff has retained Counsel who are competent and experienced in complex class actions. There is no conflict between Plaintiff and other Class members.

40.     Plaintiff's claims are typical of the claims of the Classes he seeks to represent, as it is Defendants' standard practice to conduct background checks on applicants, and to declare that background checks on them will be required, without having first made them conditional offers of employment. Plaintiff is entitled to relief under the same theories of liability as other Class members.

41.     Class certification is also appropriate under Rule 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual Class members. Common legal and factual questions include:

    (a)    whether Defendants violated the NYCHRL by undertaking a background check on Plaintiff and Class members without having first made them a conditional offer of employment;

    (b)    whether Defendants violated the NYCHRL by exposing Plaintiff and Class members to any declaration that Defendants would be conducting a background check on them before extending to them a conditional offer of employment;

    (c)    whether Defendants violated the NYCHRL by denying employment to Plaintiff and Class members without having first conducting an Article 23-A analysis and allowing Plaintiff and Class members to submit evidence for the analysis and then respond to the analysis;

    (d)    whether Defendants were willful in their noncompliance with the requirements of the NYCHRL;

    (e)    whether statutory damages, compensatory damages, exemplary damages and punitive damages for Class members are warranted; and

    (f)    whether a declaratory judgement and/or injunctive relief is warranted regarding Defendants' policies and practices.

42.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Class members have been damaged and are entitled to recovery as a result of Defendants' uniform policies and practices. The amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution of this litigation. A class action will allow more individuals to obtain relief, given the high cost of bringing individual actions, while also saving judicial resources.

43.     Class certification is appropriate under Rule 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The Class

members are entitled to declaratory and injunctive relief to end Defendants' common, uniform, unfair, and discriminatory policies and practices.

## **CAUSE OF ACTION**

### VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW
### N.Y.C. Admin. Code. § 8-101 *et seq.*, § 8-107(11-a)

#### *Brought by Plaintiff on Behalf of Himself and the Classes*

44.     Plaintiff, on behalf of himself and the Classes, incorporates the preceding paragraphs as if fully set forth herein and alleges as follows:

45.     Defendants violated the NYCHRL when they conducted background checks on Plaintiff and Class members without first making them conditional offers of employment.

46.     Defendants violated the NYCHRL when they declared that they would be conducting background checks on Plaintiff and Class members without first making them conditional offers of employment.

47.     Defendants violated the NYCHRL when they denied employment to Plaintiff and Class Members without first undertaking an Article 23-A analysis and allowing them an opportunity to submit evidence for the analysis and then respond to it.

48.     Each of these failures by Defendants establishes a separate cause of action and injured Plaintiff and Class members.

49.     As a result of all the foregoing failures, Plaintiff and the Class members have lost employment opportunities, earnings and other employment benefits.

50.     In addition to damages, Plaintiff and Class members seek injunctive and declaratory relief to correct Defendants' discriminatory policies and practices by compelling them to comply with the hiring procedures set forth by the Fair Chance Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Class members pray for relief as follows:

    (a)    Certification of the case as a class action on behalf of the proposed Classes;

    (b)    Designation of Plaintiff Franklin as Class representative;

    (c)    Designation of Plaintiff's counsel of record as Class Counsel for both Classes;

    (d)    Injunctive and/or declaratory relief to correct Defendants' discriminatory policies and practices;

    (e)    An award of all applicable compensatory and statutory damages for violations of the NYCHRL;

    (f)    An award of all applicable punitive damages for all violations of the NYCHRL that are found to be willful;

    (g)    An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

    (h)    Pre-judgment and post-judgment interest, as provided by law;

    (i)    Payment of a reasonable service award to Plaintiff Franklin, in recognition of the services he has rendered and will continue to render to Class members, and the risks he has taken and will take; and

    (j)    Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: December 11, 2020

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

*/s/ C.K. Lee*
By:  C.K. Lee, Esq.

C.K. Lee (CL 4086)
Rony Guldmann (RG 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff and the Classes*